GLICKSTEIN, Judge.
This appeal is from a final declaratory decree rendered by the trial court which found that a corporation, H.J. Zimmerman and Associates, Inc. (Zimmerman), was not an insured under a policy issued by appellee, State Farm Fire and Casualty Company. We reverse and remand with direction to enter final declaratory judgment in favor of appellant, Hartford Insurance Company of the Southeast.
On or about August 2,1988 Christina Wer-ner was killed in an automobile accident involving debris which had fallen from a truck hauling mud from property owned and being developed by Chapel Trad Associates, Ltd. (Chapel Trail), which was insured by State Farm (appellee). Zimmerman was the named insured in the policy issued by Hartford (appellant) and had entered into a contract with Chapel Trail, which provided in part:
WHEREAS, Owner intends to develop, construct and operate certain property described on Exhibit A (“Property”), which shall include development, construction and operation of, without limitation, residential dwelling units and commercial facilities (“Venture”); and
WHEREAS, the Owner and the Associates desire to enter into an agreement whereby Associates shall assist the Owner in maintaining, developing and operating the Venture all upon the terms and conditions of this Agreement....
The decedent’s estate sued Chapel Trail and Zimmerman, and a settlement was reached in that tort action by which appellant paid $250,000 on behalf of Zimmerman and appellee paid $250,000 on behalf of Chapel Trail. Appellant then brought the present declaratory action, claiming that its insured, Zimmerman, was also insured by appellee and therefore appellee owed appellant a pro-rata share of its payment on the claim, or $125,000. Both insurance policies provided pro rata coverage in the event that other insurance was available to the insured.
Appellant based its action on a provision in the insurance policy issued to Chapel Trail by appellee, which reads that the per *654 sons insured under the policy includes “[a]ny person (other than employee of the named insured) or organization while acting as real estate manager for the named insured.” (Emphasis added.) The parties hereto agreed that the dispositive and only issue in the declaratory action was whether Zimmerman, the corporation, was acting as a “real estate manager” for Chapel Trail as used in the policy issued by appellee. The trial court concluded it was not. We disagree, based on the express language of the contract between Chapel Trail and Zimmerman.
The contract, dated March 1, 1987, was for a term of ten years during which Zimmerman was to receive a substantial annual “Management Fee” plus a percentage of the net profits from Chapel Trail’s operation and sales.
As alleged in appellant’s complaint, the contract provided that Zimmerman was responsible for the day-to-day management of the venture. The following laundry list of Zimmerman’s duties was not exclusive, albeit broad:
2. Duties, Responsibilities, and Authority of Associates. Associates represents itself as competent and experienced in the area of real estate development, including projects similar to the Venture. Associates agrees to perform its duties diligently, faithfully, and prudently. Associates shall (subject to the directions of the Owner) be responsible for the day-to-day management of the Venture. It is the intent of the parties that Associates shall be responsible for implementing the policies and directives of the Owner. Associates shall provide the expertise necessary to carry out its duties, which (subject to the directions of the Owner) shall include but not be limited to the following; to wit:
(i) To manage, oversee, and supervise the Venture effectively and efficiently so as to provide a suitable, safe, and adequate environment for successful completion of the Venture.
(ii) To advise and consult with the Owner in connection with the hiring, firing, training, and supervising the personnel necessary and convenient to the efficient operation of the Venture, including, but not limited to, consultants utilized for the purpose of obtaining various governmental approvals necessary for the development of the Venture, sales personnel relative to advertising, marketing and a general overall sales program.
(iii) To establish budgets, systems and procedures so as to keep accurate and complete records with respect to the ongoing cost analysis of the Venture. Notwithstanding the foregoing, Associates shall not be responsible for maintaining the books of original entry of the Owner, i.e., checkbooks, general ledger, disbursements, or accounts receivable, but shall assist Owner in the processing of all primary contracts, subcontracts, vouchers, requisitions, bills and other required documentation which shall be reasonably requested by the Owner.
(iv) To establish, within budgetary guidelines approved by the Owner, all wages, salaries, and benefits to be paid by the Owner, if any.
(v) To arrange for appropriate types, categories, and amounts of insurance to cover all real and personal properties of the Venture, and to secure certificates of such insurance as may, from time to time, be required or deemed necessary in the reasonable opinion of Associates.
(vi) To negotiate with primary contractors, subcontractors, suppliers, material-men, engineers, architects, and attorneys for the development, construction, operation and maintenance of the Venture so that the development of the Property proceeds in an expeditious and efficient manner.
The parties, without objection by either, presented conflicting opinion evidence to the trial court as to the “common usage” meaning of “real estate manager.” We conclude it was error to seek out “common usage” and choose from such opinions to determine same in light of the express provisions of the contract between Chapel Trail and Zimmerman, which clearly established Zimmerman to be something considerably different than a “construction manager” as determined by the trial court.
*655 Given the fact that the insurance policy insured a “real estate manager,” and given the language in the agreement between Zimmerman and Chapel Trail, we believe that Zimmerman was insured under the State Farm policy. We therefore reverse and remand.
DELL, C.J., and PARIENTE, J., concur.